IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


RITA S. LITTLE                                              PLAINTIFF

VS.                          CIVIL ACTION NO. 3:06-cv-501-WHB-LRA

K & B MISSISSIPPI CORPORATION
d/b/a RITE AID                                             DEFENDANT



OPINION AND ORDER

This cause is before the Court on the Motion of Defendant for
Summary Judgment.  The Court has considered the Motion, Response,
Rebuttal, attachments to each, as well as supporting and opposing
authorities and finds that the Motion is well taken and should be
granted.


I.  Factual Background and Procedural History

On November 25, 2005, Plaintiff Rita Little ("Little") began
her ten day period of employment as a cashier for Defendant K & B
Mississippi Corporation d/b/a Rite Aid ("Rite Aid"), at one of its
stores located in Jackson, Mississippi.  At the time she was hired,
Little received training on the anti-discrimination and harassment
policies that had been implemented by Rite Aid.  Little was also
given a copy of the Associate Atlas, which contains these policies,
and the policies were posted in the store at which she worked.  In
accordance with these policies, an employee who believes she is

being harassed is instructed to "immediately tell the person displaying the offensive behavior to stop." The employee is also instructed to refer to the Associate Complaint Resolution Procedure, which advises employees to complain up to the level of the Vice President of Human Resources in the event they are not satisfied with the remedial actions taken at the local level. In the event an employee is not comfortable with the Associate Complaint Resolution Procedure, he or she is instructed to report the alleged harassment directly to Rite Aid using the toll free number provided for that purpose. This telephone number was also posted in the Rite Aid store at which Little worked.

Little claims that after she began working, she was subjected to several acts of sexual harassment by Greg Bass ("Bass"), one of her co-employees, who allegedly touched her breasts while giving her a bear hug, grabbed the back of her leg, rubbed her shoulders, kissed the back of her neck, and bought her a chocolate flavored lip gloss. Little further claims that she reported the breast-touching incident to her assistant manager Renee Davy ("Davy") who reportedly told her that Bass was harmless and simply playing. Davy denies this allegation. Little did not report any of the other alleged instances of harassment. Additionally, Little did not report Bass's or Davy's conduct to the store manager and did not use the Associate Complaint Resolution Procedure or toll free number provided by Rite Aid to report the alleged harassment.

Little's last day of work with Rite Aid was December 5, 2005. On December 9, 2005, Little's sister telephoned Davy and accused Rite Aid of tolerating sexual harassment in the workplace. Davy claims that this was the first time she learned of the alleged harassment. Upon receiving the telephone call, Davy reported Little's allegations to Andy Vreeland ("Vreeland"), the manager of the Rite Aid store at which Little worked. A meeting to discuss Little's allegations was scheduled for December 12, 2005, but neither Little nor her sister came to the meeting. Vreeland claims he was first notified of Bass's alleged acts of sexual harassment during a meeting with Little on December 16, 2005. During this meeting, Vreeland informed Little of the need to conduct an immediate investigation of her claims, and offered to change either Bass's or her assigned shift/days during the investigation.[1] Thereafter, although Little failed to meet with Richard Ellison ("Ellison"), the Regional Human Resources Manager for Rite Aid, as agreed, Ellison conducted an investigation of Little's claims including interviewing Vreeland, Bass, Davy, and at least one co-employee. The results of the purported investigation were that Little had not used the reporting mechanisms instituted by Rite Aid to report the alleged harassment, and that her claims of harassment were unfounded.

---

[1] Vreeland contends that he also offered to re-assign Little to another store. Little does not remember this offer as having been made.

Again, Little last worked at Rite Aid on December 5, 2005.  On that date, Little was given a final written warning because the drawer from her prior shift was short $89.82.  She was warned that future shortages could result in further disciplinary action including termination.  Thereafter, Little failed to report to Rite Aid for her scheduled shifts, but did call-in "sick" a couple of times.  Little was terminated by Rite Aid for job abandonment on December 20, 2005.

On or about February 8, 2006, Little filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and received her Right to Sue Letter from that agency on June 13, 2006.  On September 8, 2006, Little filed a lawsuit in this Court alleging claims of sexual harassment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and state law claims of intentional and negligent infliction of emotional distress.  As Little has alleged claims arising under federal law, this Court may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.  Defendant now moves for summary judgment on Little's claims.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

**A.  Federal Law Claims**

Little's sexual harassment claim is analyzed under the framework adopted by the United States Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  As explained by the United States Court of Appeals for the Fifth Circuit in Casiano v. A T & T Corp., 213 F.3d 278, 283-84 (5th Cir. 2000), the first step under Ellerth and Faragher is to determine whether the complaining employee has suffered a "tangible employment action."[2]  If such

---

[2]  A tangible employment action "requires an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  See Ellerth, 534 U.S. at 761-62.

6

action has occurred, the lawsuit is classified as a 'quid pro quo' case, if it has not, the lawsuit is classified as one of 'hostile environment.' Id. at 283.  Little does not claim that she was fired, reassigned with significantly different responsibilities, or that Rite Aid made any decision that caused a significant change in her benefits secondary to the alleged harassment. Accordingly, the Court finds that hers is a hostile environment case.

As regards a hostile environment case, the next query is whether the complained of conduct constitutes "severe or pervasive sexual harassment." Id. at 284 (citing Ellerth, 524 U.S. at 752; Faragher, 524 U.S. at 787-88).  If the conduct does not rise to the level of "severe and pervasive," vicarious liability is not imputed to the employer under Title VII.  If, however, the conduct does rise to such level, "the employer is vicariously liable unless [it] can prove both prongs of the Ellerth/Faragher affirmative defense, to wit:  Absent a tangible employment action, (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Id. (citing Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 805).  The Ellerth/Faragher affirmative defense applies equally to Little's claim of constructive discharge.  See Pennsylvania State Police v. Suders, 542 U.S. 129, 148 (2004) (extending the Ellerth/Faragher

7

affirmative defense to cases in "which an official act does not underlie the constructive discharge.").

To establish a hostile work environment claim, Little must demonstrate: "(1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005) (citing Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298 (5th Cir. 2001)).  The Court finds, based on the evidence before it, that Little has satisfied the first three elements necessary to state a *prima facie* claim of sexual harassment.

To prove the fourth element, the Fifth Circuit has held:

> For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.   In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Harvill, 433 F.3d at 434 (alterations in original) (citations omitted).  Additionally, "[f]or harassment to affect a term, condition, or privilege of employment, it must be both objectively

and subjectively abusive." <u>Hockman v. Westward Communications,</u> <u>LLC</u>, 407 F.3d 317, 326 (5th Cir. 2004) (citing <u>Harris</u>, 510 U.S. at 21-22)). A plaintiff does not need to prove that the alleged harassment was both severe and pervasive, a showing on only one of these factors is sufficient to state a actionable claim of sexual harassment. <u>Id.</u>, at 434-35.

On the issue of frequency, the record shows that the alleged acts of harassment occurred within the ten-day period Little worked for Rite Aid, and occurred on the four days she worked with Bass. As to the severity of the alleged conduct, the Court finds that the acts of harassment alleged by Little do not rise to the level previously found actionable by the Fifth Circuit. Little alleges that Bass touched her breast while giving her a bear hug and kissed her on the neck. The Court questions whether this conduct could be perceived as abusive because the record shows that Little engaged in similar physical acts. <u>See</u> Mot. for Summ. J., Ex. H (Barkley Decl.) at ¶ 7 (describing incident when Little approached Bass and hugged and kissed him). Additionally, the Fifth Circuit has previously found that conduct similar to that about which Little complains does not create a hostile work environment. <u>See e.g.</u> <u>Hockman</u>, 407 F.3d at 328 (finding that conduct including slapping the plaintiff's buttocks with a newspaper, grabbing or brushing against plaintiff's breasts and behind, and holding plaintiff's cheek and trying to kiss her was insufficient to create a hostile

work environment); <u>Shepard v. Comptroller of Public Accountants of State of Tex.</u>, 168 F.3d 871 (5th Cir. 1999) (finding that evidence that co-worker touched the plaintiff's arm on several occasions and rubbed his hand from her shoulder to her wrist while standing beside her was not sufficient to prove a sexual harassment claim). As to the third factor, that is whether the alleged harassment was physically threatening or humiliating, the record shows that Bass never physically injured Little or threatened her in anyway.   <u>See</u> Mot. for Summ. J., Ex. C (Little Dep.) at 90, 93.   At most, Bass's alleged conduct made Little "feel uncomfortable."   <u>Id.</u>, Ex. C (Little Dep.) at 92.   Finally, Little has not presented any evidence to demonstrate the manner in which Bass's alleged conduct "unreasonably interfered" with her work performance.

Having reviewed the totality of the circumstances underlying Little's hostile environment claim, the Court finds that she has failed to demonstrate a genuine issue of material fact as to whether the harassment she alleges was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive working environment.   Accordingly, the Court finds that Rite Aid is entitled to summary judgment on this claim.

In the event the Court is mistaken, and Little has stated an actionable hostile work environment claim, the Court finds that the claim nevertheless fails under the <u>Ellerth/Faragher</u> affirmative defense.   Again, to avail itself to this defense, Rite Aid must

show that it exercised reasonable care to prevent and correct promptly any sexual harassment, and that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. See Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 805.

In support of this defense, Rite Aid has submitted copies of its nondiscrimination policies that expressly prohibit and condone all forms of discrimination and harassment in the workplace. See Mot. for Summ. J., Ex. D (Ellis Decl.) at Ex. 2. These policies provide, in relevant part:

> Rite Aid's Nondiscrimination policy applies to all areas of employment... If an associate feels he/she has been discriminated against, he/she must contact his/her Human Resources Manager or follow the steps detailed in Rite Aid's Associate Complaint Resolution Procedure.... If you are not comfortable using the Associate Complaint Resolution Procedure, you may call 1-888-RITE-CALL (1-888-748-3225) to report the matter.
>
>         ....
>
> If you feel that you are the victim of harassment ... immediately tell the person displaying the offensive behavior to stop.... Any associate who feels he or she has been harassed should also refer to the Associate Complaint Resolution Procedure section that follows and immediately report the harassment (even if you have discussed the matter with the individual directly involved.) If you are not comfortable using the Associate Complaint Resolution Procedure, you may call 1-888-RITE-CALL (1-888-748-3225) to report the matter. You may remain anonymous; however, it is beneficial to the investigation of the incident to have as much information as possible. All complaints of discrimination shall be investigated and remedial actions taken where necessary.
>
>         ....

ASSOCIATE COMPLAINT RESOLUTION PROCEDURE

Step 1.
Discussion of the problem with your immediate supervisor
or manager is encouraged as a first step....

Step 2.
If your problem is not resolved after discussion with
your supervisor or manager, or you feel that a discussion
with your supervisor is inappropriate, you are encouraged
to request a meeting with your store ... or corporate
division human resources manager.   In an effort to
resolve the problem, the human resource manager will
consider the facts, conduct an investigation, and may
also review the matter with other members of your
facility's management.   You will normally receive a
response from your human resource manager within five
working days of meeting with him or her.

Step 3.
If you are not satisfied with your human resource
manager's decision and wish to pursue the problem or
complaint further, you may prepare a written summary of
your concerns and request that the matter be reviewed by
the vice president of Human Resources Administration.
After a full examination of the facts (which may include
a review of the written summary of your statement,
discussions with the individuals concerned, and further
investigation, if necessary), the vice president of Human
Resources Administration will normally advise you of the
decision within approximately five working days.   The
decision of the vice president of Human Resources
Administration shall be final.

Id., Ex. D (Ellis Decl.) at Exs. 2 & 6.   The nondiscrimination

policy is contained in the Associate Atlas that Little received

when she was hired, and is also prominently displayed in the

workplace.   Id., Ex. D (Ellis Decl.) at ¶ 4.   Little acknowledges

receiving both the Associate Atlas as well as anti-discrimination

and harassment training, which includes:

If I am not comfortable confronting a person(s)
displaying inappropriate conduct, I may report the

12

> conduct to my manager, supervisor, or Human Resources
> Manager. If these avenues are not comfortable to me, or
> if I have any difficulty reporting this to someone
> locally, I may call the Corporate Human Resources
> Department directly.

Id., Ex. D (Ellis Decl.) at Exs. 2 & 5.  Based on the policies and procedures implemented by Rite Aid, the Court finds that it did exercise reasonable care to prevent and promptly correct sexual harassment in the workplace, thus satisfying the first prong of the Ellerth/Faragher affirmative defense.

Second, the Court finds that Little unreasonably failed to take advantage of any preventative or corrective opportunities provided by her employer or to avoid harm otherwise.  Little acknowledges that she did not utilize either the Associate Complaint Resolution Procedure or the toll free number provided by Rite Aid to report her claims of sexual harassment.  Id., Ex. C (Little Dep.) at 60, 62, 79, and 86.  Little argues, however, that she was relieved of any obligation to report to a higher authority because she complained of the alleged harassment to Davy, and Davy did not take any remedial action against Bass.  The Court disagrees. In Hockman v. Westard Communications, LLC, 407 F.3d 317 (5th Cir. 2004), the district court granted summary judgment on the failure to take prompt remedial measures factor of the Ellerth/Faragher affirmative defense on the basis that the plaintiff unreasonably failed to complain to a higher echelon employee after she was dissatisfied with the manner in which her

immediate supervisor dealt with her complaint of sexual harassment.
Affirming the decision of the district court, the Fifth Circuit
found summary judgment was warranted as the undisputed facts
showed: (1) plaintiff had received an employee handbook containing
her employer's anti-harassment policy; (2) the policy specifically
provided that if an employee did not feel that her complaints of
harassment were being satisfactorily handled by her supervisor, she
should report the incident directly to the Director of Human
Resources; (3) the plaintiff acknowledged receiving the handbook
and understanding its provisions as evidenced by her signature; and
(4) despite this awareness, there was no evidence that the
plaintiff availed herself of any of her employer's reporting
provisions after complaining to her supervisor. Id. at 329. See
also Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 413 (5th Cir.
2002) (affirming summary judgment based on the Ellerth/Faragher
affirmative defense on a finding that the policies of the
plaintiff's employer "made clear that several persons in addition
to the employee's immediate and next higher supervisors were
available to receive and pursue sexual harassment claims."  When
the supervisor to whom she had reported the alleged sexual
harassment made no attempt to remedy the situation and, instead,
began sexually harassing the plaintiff himself, the Fifth Circuit
found that plaintiff's "reasonable (not to mention obvious) course
of action would have been to report [their] conduct to one of those

14

individuals with authority higher than [theirs]."); National Resort
Mgmt. Corp. v. Cortez, 470 F. Supp. 2d 659, 665 (N.D. Tex. 2007)
(concluding that plaintiffs had unreasonably failed to take
advantage of the corrective opportunities provided by their
employer because "an objectively reasonable employee would not have
limited herself to complaining to ... a general manager, especially
when [he] proved ineffective in dealing with the situation.
Rather, an objectively reasonable employee would have utilized the
reporting options at hand to individuals higher up in the
company."). Based on the foregoing authorities, the Court finds
that Little did not reasonably take advantage of the
nondiscrimination policies implemented by Rite Aide because she
neither reported the alleged harassment to her store manager, the
Regional Human Resources Manager, or the Vice President of Human
Resources Administration in accordance with the Associate Complaint
Resolution Procedure, nor reported the harassment by using the toll
free number provided by Rite Aid for that purpose.

Additionally, once Vreeland was informed of the alleged
harassment, he immediately scheduled an appointment with Little to
discuss her claims. Little did not keep the appointment. When
Little finally met with Vreeland, he offered to schedule Little or
Bass to different shifts/days while her claims were being
investigated. Thereafter, Vreeland contacted Ellis, the Regional
Human Resources Manager, and the latter conducted a thorough
investigation of Little's claims.

15

Based on this evidence, the Court finds that Little has failed to show that there exists a genuine issue of material fact on either prong of the Ellerth/Faragher affirmative defense raised by Rite Aid.  Accordingly, the Court finds that Rite Aid may avail itself to this defense on both Little's claim of hostile work environment and constructive discharge and, therefore, that summary judgment in its favor on these claims should be granted.


**B.   State Law Claims**

In addition to her federal law claims, Little alleges state law claims of intentional and negligent infliction of emotional distress.  Rite Aid has moved for summary judgment on both of these claims arguing that they are not supported by the evidence.

Mississippi courts:

> [H]ave found liability [on a claim of intentional infliction of emotional distress] only where the defendant's conduct has been extreme and outrageous.  It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. The rough edges of our society are

16

> still in need of a good deal of filing down, and in the
> meantime plaintiffs must necessarily be expected and
> required to be hardened to a certain amount of rough
> language, and to occasional acts that are definitely
> inconsiderate and unkind.   There is no occasion for the
> law to intervene in every case where someone's feelings
> are hurt.

Wong v. Stripling, 700 So. 2d 296, 306 (Miss. 1997).  Little first

argues that there is a genuine issue of material fact with regard

to her claim of intentional infliction of emotional distress

because Bass subjected her to repeated acts of sexual harassment.

Even if Bass's alleged conduct did rise to the level necessary to

support a claim of intentional infliction of emotional distress,

under Mississippi law Rite Aid cannot be held vicariously liable

for Bass's actions unless it authorized or ratified his conduct.

See McClinton v. Delta Pride Catfish, Inc., 792 So. 2d 968, 976

(Miss. 2001).   See also Hatley v. Hilton Hotels Corp., 308 F.3d

473, 476 (5th Cir. 2002) (finding that an employer could not be

held vicariously liable for intentional infliction of emotional

distress because, under Mississippi law, "an employer is not liable

for an employee's intentional or criminal acts unless the employer

either authorized or ratified the act.") (citing Tichenor v. Roman

Catholic Church of Archdiocese of New Orleans, 32 F. 3d 953, 959

(5th Cir. 1994)).  In the case sub judice, Little has not presented

any evidence that Rite Aid either authorized or ratified Bass's

alleged sexually harassing conduct.   At best, Little argues that

Rite Aid did not immediately investigate or remedy Bass's conduct.

Neither of these arguments are sufficient to show ratification.

17

See e.g. Hatley, 308 F.3d 476 (citing Craft v. Magnolia Stores Co., 138 So. 405, 406 (Miss. 1931) for the proposition that an employer does not ratify the unauthorized acts of its employee simply by retaining that employee after receiving knowledge of his tortious conduct).  See also Knight v. Mississippi Dept. of Public Safety, 3:06-cv-139, 2007 WL 2219327, at *8 (S.D. Miss. Jul. 27, 2007)(finding that plaintiff's argument that her employer ratified allegedly harassing conduct by refusing to properly investigate her complaints did not support a claim of intentional infliction of emotional distress, in part, because the plaintiff had not complained of the alleged harassment to anyone other than her immediate supervisor despite the provisions in the harassment reporting procedures implemented by the employer).

Second, Little supports her claim of intentional infliction of emotional distress citing Davy's failure to investigate her claim of sexual harassment.  On this issue, the Fifth Circuit has held: "As a matter of law, an [employer's] failure to respond adequately to the plaintiffs' complaints, while negligent, does not rise to the level of outrageousness necessary to establish intentional infliction of emotional distress" under Mississippi law.  See Hartley, 308 F.3d at 476.  For these reasons, the Court finds that there does not exist a genuine issue of material fact as to whether Little can recover on her intentional infliction of emotional distress claim alleged against Rite Aid and, therefore, that Rite Aid is entitled to summary judgment on this claim.

To succeed on her negligent infliction of emotional distress claim, Little must prove "some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental." Randolph v. Lambert, 926 So. 2d 941, 946 (Miss. Ct. App. 2006) (quoting American Bankers' Ins. Co. of Fla. v. Wells, 819 So. 2d 1196, 1208-09 (Miss. 2001)).  In the case *sub judice*, the only evidence of "physical manifestation of injury" is Little's claims that she suffered weight loss, began biting her nails, restarted smoking, and had difficulty sleeping.  See Mot. for Summ. J., Ex. C (Little Dep.), at 69-70.  These claims, however, are not supported by medical testimony or records, and there is no evidence that these symptoms could have resulted because of, or otherwise be attributed to, the conduct of Rite Aid.  Under Mississippi law, a plaintiff cannot recover for negligent infliction of emotional distress based on her claims of stress, anxiety, embarrassment, and crying spells.  See e.g. Wells, 819 So. 2d at 1209 (finding that complaints of anxiety, worry, and sleeplessness are insufficient to support a claim for negligent infliction of emotional distress).  As Little has failed to establish that the alleged conduct by Bass or Rite Aid resulted in demonstrable harm, the Court finds that she has failed to show that there exists a genuine issue of material fact with regard to her claim of negligent infliction of emotional distress.  Accordingly, the Court finds that Rite Aid is entitled to summary judgment on this claim.

19

**IV.   Conclusion**

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant K & B Mississippi Corporation d/b/a Rite Aid [Docket No. 18] is hereby granted.  A Final Judgment dismissing this case with prejudice will be entered in favor of Defendant by a separate order as required by Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this the 27th day of August, 2007.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE